# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20660

United States Court of Appeals
Fifth Circuit

**FILED**
June 16, 2017

Lyle W. Cayce
Clerk

JOSE PRIMITIVO JAIMES SIERRA,

      Plaintiff - Appellee

v.

NASLY XIMENA RIASCOS TAPASCO,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-640

Before DAVIS, JONES, and CLEMENT, Circuit Judges.

PER CURIAM:*

Jose Primitivo Jaimes Sierra ("Jaimes") filed a petition under the Hague Convention for return of K.J.R., his now 7-year-old daughter, to Mexico. Nasly Ximena Riascos Tapasco ("Riascos"), the child's mother, took K.J.R. from Mexico to Texas without Jaimes's approval in July 2014. The district court held that Jaimes carried his burden to prove by a preponderance that K.J.R.'s habitual residence was supplanted to Mexico. Riascos appeals. Because we

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20660

conclude that the district court did not err in finding that Jaimes carried his burden to prove the parties shared a mutual intent to change K.J.R.'s habitual residence to Mexico, we AFFIRM.

## I.

This suit arises under the Hague Convention on the Civil Aspects of International Child Abduction ("Convention"), as implemented by Congress through the International Child Abduction Remedies Act,[1] which creates a remedy for the return of a child under the age of 16 to his or her country of habitual residence upon a showing that the child was wrongfully removed.[2]

Jaimes and Riascos met in Charlotte, North Carolina in 2006, moved in together, and never married. Riascos had K.J.R. on July 23, 2009. Jaimes is a Mexican national who was living in the United States illegally. Riascos, a Colombian national, is legally in the United States on a visa.

In 2011, Jaimes pleaded guilty to a domestic violence charge brought against him for injuries Riascos sustained.[3] Jaimes was given the option to either leave the United States voluntarily with the possibility of returning legally in the future, or be deported. Jaimes chose to leave voluntarily and return to Mexico. Riascos executed a notarized travel authorization letter to allow K.J.R. to travel with Jaimes to Mexico. Jaimes and K.J.R. left North Carolina for Mexico in October 2012. Riascos remained in the United States.

Jaimes and K.J.R. initially lived with Jaimes's mother and eventually moved into their own apartment in Mexico City. Two months after Jaimes left the United States, in December 2012, Riascos visited Mexico, stayed with Jaimes and K.J.R. in Jaimes's apartment, and returned to the United States

---

[1] 22 U.S.C. §§ 9001-9011, formerly cited at 42 U.S.C. §§ 11601-11610.

[2] *See* Convention, arts. 1-5.

[3] The parties dispute Jaimes's actual guilt–Jaimes claims that Riascos hit herself with a notebook while Riascos claims that she was a victim of Jaimes's physical abuse. Regardless, Jaimes said he pleaded guilty to the charge so that they could maintain custody over K.J.R.

without taking the child. Riascos visited Mexico again in June 2013 for a few days, stayed in Jaimes's apartment, and returned to the United States without taking the child. Riascos again returned to Mexico the following month in July 2013 to celebrate K.J.R.'s birthday and stayed for approximately 20 days. After that trip, Riascos returned to the United States without taking the child.

Jaimes and K.J.R. traveled from Mexico to Colombia in December 2013. Riascos met them in Colombia a couple weeks later. The three stayed in Colombia for about a month and a half. Jaimes testified that he asked Riascos if she wanted to take K.J.R. with her to the United States and she declined. At the end of their trip, Riascos executed a second travel authorization letter allowing K.J.R. to travel with Jaimes back to Mexico.

In February 2014, Jaimes updated K.J.R.'s immunizations and enrolled her in school for the upcoming fall term. In the following months, Riascos claims that Jaimes threatened her and told her that she would never see K.J.R. again.

Riascos returned to Mexico for K.J.R.'s fifth birthday in July 2014. From this point onward, through the child's abduction, the parties' stories greatly diverge.

Jaimes testified he never saw Riascos in Mexico in July 2014; in fact, he said he had not seen her since their trip to Colombia earlier that year. Jaimes testified that he dropped K.J.R. off at his sister's home on the evening of July 22 to spend the night, did some shopping for his daughter's birthday party the following day, spent the night in his own home that evening, and heard from his sister the following morning that K.J.R. was missing.

Riascos testified that she did not tell Jaimes she was coming to Mexico for K.J.R.'s birthday, but she showed up at his home on July 22. When Riascos arrived, she said Jaimes started insulting and hitting her. She said that Jaimes took K.J.R. out of her arms and threw K.J.R. on the bed. Eventually,

she said, Jaimes took Riascos and K.J.R. to his sister's home to spend the night. Early the next morning, Riascos and K.J.R. left Mexico on a bus heading to Riascos's home in Houston.

Jaimes filed a verified complaint and petition for return of child under the Convention. Riascos filed a motion to dismiss on forum non conveniens grounds and alternatively to abstain. The district court denied the motion and, after an evidentiary hearing, held that Jaimes carried his burden to establish that K.J.R's habitual residence was Mexico, that Jaimes had the "rights of custody" required, and that he was exercising those rights during the time K.J.R. was removed from Mexico.[4]

## II.

The only significant issue before the Court is whether the district court erred in determining the habitual residence of the child was supplanted to Mexico and whether the parties shared a mutual intent that the child abandon her U.S. residence and establish one in Mexico.[5]

To prevail in a petition for return of child, Jaimes must prove by a preponderance of the evidence:

> (1) that [Riascos] removed or retained the child somewhere other than the child's habitual residence; (2) that the removal or retention violated [Jaimes's] rights of custody under the habitual-residence nation's laws; and (3) that at the time of removal or retention, [Jaimes] was exercising those rights or would have exercised those rights but for the removal or retention.[6]

---

[4] *Jose Jaimes Sierra v. Nasly Riascos Tapasco*, No. 4:15-CV-00640, 2016 WL 5402933, at *5-8, 11 (S.D. Tex. Sept. 28, 2016).

[5] Riascos also complains that the district court erred in denying her motion to dismiss on forum non conveniens grounds. We have reviewed the district court's ruling on this motion and are satisfied that the district court did not abuse its discretion.

[6] *Delgado v. Osuna*, 837 F.3d 571, 577 (5th Cir. 2016) (citing *Larbie v. Larbie*, 690 F.3d 295, 307 (5th Cir. 2012)); *see also* 22 U.S.C. § 9003(e)(1) (setting out the preponderance of the evidence standard).

No. 16-20660

So a court's primary inquiry, and the sole issue before us, is whether the child was wrongfully removed from her country of "habitual residence."[7]

To determine a child's "habitual residence," the court "begins with the parents' shared intent or settled purpose regarding their child's residence."[8] And "the threshold test is whether both parents intended for the child to abandon the [habitual residence] left behind."[9] "The mere fact that the parents have consented for the child to move to a new country does not prove that they share the necessary intent to make that new location the child's habitual residence."[10] "Absent shared intent, prior habitual residence should be deemed supplanted only where the objective facts point unequivocally to this conclusion."[11] The district court held that Jaimes and Riascos shared the intent to supplant K.J.R.'s habitual residence to Mexico. "This court reviews a district court's shared intent determination for clear error."[12]

The facts recited above support the district court's findings that K.J.R.'s habitual residence was Mexico and the parties shared a mutual intent that K.J.R. abandon her U.S. residence and establish a new one in Mexico. We therefore AFFIRM the district court's judgment.

---

[7] *Berezowsky v. Ojeda*, 765 F.3d 456, 465 (5th Cir. 2014).

[8] *Larbie*, 690 F.3d at 310.

[9] *Berezowsky*, 765 F.3d at 466 (alteration in original) (quoting *Larbie*, 690 F.3d at 310-11).

[10] *Id.* at 467.

[11] *Id.* at 466 (quoting *Larbie*, 690 F.3d at 311).

[12] *Delgado*, 837 F.3d at 578; *see also Berezowsky*, 765 F.3d at 466 & n.7 ("We affirm the district court's determination that the parents shared an intent to make a particular country their child's habitual residence unless it is implausible in light of the record as a whole. . . . [W]e join our sister circuits in treating the shared intent determination as a factual finding that is reviewed for clear error.").